# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

MICHAEL BOUNDS, FOREST OLIVIER,
WIA DAY, ADAM LAGUNA, DANIEL BELL,
and ZACHARY LORENZ,

Civil No. 13-266 (JRT/FLN)

Plaintiffs,

v.

MARK HANNEMAN, KARL WILLERS,
BARB MATHWIG, BRYCE SCHUENKE,
PETER ZAJAC, TROY LUKE, CHRIS MCCALL,
MARC SUCHY, TROY KEMP, PAUL IRELAND,
MICHAEL HADLAND, MICHELLE NESS,
NICHOLAS JACOBSON, CHAD VANHORN,
DANIEL LEWIS, STEVE SCHULZ,
ANDREW MAHOWALD, JOSHUA LAWRENZ,
MATT OLSON, ADAM CONNOR,
DUSTIN ROEMELING, KENNETH WILLERS,
JOSHUA MCCEWEN, CHRIS HENRICHS,
LONNIE ROLOFF, DAN SHERBURNE,
HUTCHINSON POLICE DEPARTMENT,
FARMINGTON POLICE DEPARTMENT,
WASHINGTON COUNTY SHERIFF'S OFFICE,
ANOKA COUNTY SHERIFF'S OFFICE,
RAMSEY COUNTY SHERIFF'S OFFICE,
COON RAPIDS POLICE DEPARTMENT,
FILLMORE COUNTY SHERIFF'S OFFICE,
OLMSTED COUNTY SHERIFF'S OFFICE,
THE LAKES AREA POLICE DEPARTMENT,
KANABEC COUNTY SHERIFF'S OFFICE,
CHISAGO COUNTY SHERIFF'S OFFICE,
CHASKA POLICE DEPARTMENT,
MAPLE GROVE POLICE DEPARTMENT,
LYON COUNTY SHERIFF'S OFFICE,
NOBLES COUNTY SHERIFF'S OFFICE,
BIG LAKE POLICE DEPARTMENT,
DAKOTA COUNTY SHERIFF'S OFFICE, JOHN
DOES #1-100, XYZ ENTITIES #1-100,

**MEMORANDUM OPINION
AND ORDER ON REPORT
AND RECOMMENDATION
AS TO DEFENDANTS'
MOTIONS TO DISMISS**

Defendants.

Alan Carl Milstein and Michael Jason Dube, **SHERMAN SILVERSTEIN KOHL ROSE & PODOLSKY PA**, 308 Harper Drive, Suite 200, Moorestown, NJ   08057; and **NATHAN M. HANSEN**, 2440 North Charles Street, Suite 224, North St.  Paul, MN  55109, for plaintiffs.

Jason M. Hiveley, Stephanie A. Angolkar, and Jon K. Iverson, **IVERSON REUVERS CONDON**, 9321 Ensign Avenue South, Bloomington, MN 55438, for defendants Mark Hanneman, Karl Willers, Barb Mathwig, Peter Zajac, Troy Luke, Troy Kemp, Paul Ireland, Michael Hadland, Chad Vanhorn, Daniel Lewis, Steve Schulz, Andrew Mahowald, Joshua Lawrenz, Matt Olson, Adam Connor, Dustin Roemeling, Kenneth Willers, Joshua McCewen, Chris Henrichs, Lonnie Roloff, Dan Sherburne, Hutchinson Police Department, Farmington Police Department, Washington County Sheriff's Office, Coon Rapids Police Department, Fillmore County Sheriff's Office, The Lakes Area Police Department, Kanabec County Sheriff's Office, Chisago County Sheriff's Office, Chaska Police Department, Maple Grove Police Department, Lyon County Sheriff's Office, Nobles County Sheriff's Office, and Big Lake Police Department.

James P. Spencer, Senior Assistant County Attorney, **OLMSTED COUNTY ATTORNEY**, 151 Fourth Street S.E., Rochester, MN  55904, for defendants Michelle Ness, Nicholas Jacobson, and Olmsted County Sheriff's Office.

Andrew T. Jackola, Assistant County Attorney, **ANOKA COUNTY ATTORNEY'S OFFICE**, 2100 Third Avenue, Suite 720, Anoka, MN 55303, for defendants Chris McCall and Anoka County Sheriff's Office.

Kimberly R. Parker and Robert B. Roche, Assistant County Attorneys, **RAMSEY COUNTY ATTORNEY'S OFFICE**, 121 Seventh Place East, Suite 4500, Saint Paul, MN  55101, for defendants Marc Suchy and Ramsey County Sheriff's Office.

Andrea G. White, Assistant County Attorney, **DAKOTA COUNTY ATTORNEY'S OFFICE**, 1560 Highway 55, Hastings, MN  55033, for defendants Bryce Schuenke and Dakota County Sheriff's Office.

This lawsuit challenges the actions of law enforcement officials and entities involved with a Drug Recognition Evaluation ("DRE") program through which law enforcement officers are trained to identify when citizens are under the influence of illicit

drugs. Several individuals involved in the Occupy Minneapolis ("Occupy") protests bring this action against a long list of law enforcement officials – in both their individual and official capacities – alleging that the officers targeted them to serve as test subjects for the program and provided them with substantial amounts of marijuana in violation of their rights under the First and Fourteenth Amendments of the United States Constitution. Plaintiffs also allege that the municipal entities that employ the offending law enforcement officers knew of these practices and were deliberately indifferent in their failure to train officers to not violate Plaintiffs' constitutional rights. The Defendants filed multiple motions to dismiss for failure to state a claim and seeking qualified immunity. United States Magistrate Judge Franklin L. Noel issued a Report and Recommendation ("R&R") recommending that the Court permit claims by two Plaintiffs to proceed against five individual Defendants, but that the Court dismiss all other claims without prejudice.

The Court finds that the allegations by some Plaintiffs and with regard to some Defendants adequately state claims for the violation of their constitutional rights. First, the allegations that certain Defendants administered large amounts of an illicit drug to Plaintiffs after intimating threats of arrest without first informing Plaintiffs of the risks or checking their medical histories and with no therapeutic purpose state a claim for violation of Plaintiffs' clearly established substantive due process right to bodily integrity. Second, allegations that those Defendants chose to target Plaintiffs with this practice based on their participation in a protest state a claim for violation of their clearly established First Amendment rights. The Court therefore will deny Defendants' motions

to dismiss with regard to claims by Plaintiffs Michael Bounds and Forest Olivier against

Defendants Jacobson, Kenneth Willers, Karl Willers, and John Does 1 and 2 in their

individual capacities and will dismiss without prejudice all claims against those

Defendants in their official capacities, all claims against all other Defendants, and all

claims by all other Plaintiffs.

## BACKGROUND

### I.    DEFENDANTS

Plaintiffs bring this lawsuit against law enforcement officers and law enforcement

entities whom Plaintiffs allege designed, developed, and/or ran the DRE program.

(Compl. ¶¶ 9-11, Feb. 1, 2013, Docket No. 1.)   The Defendants include twenty-six

officers, sued in their individual and official capacities and their respective law

enforcement entities, including the Ramsey County Sheriff's Office ("Ramsey County"),

the Anoka County Sheriff's Office ("Anoka County"), The Dakota County Sheriff's

Office ("Dakota County"), the Olmsted County Sheriff's Office ("Olmsted County"), and

fourteen other city police departments and sheriffs' offices (the "City and County

Defendants").[1]

---

[1] With regard to all of these law enforcement entities, Plaintiffs acknowledged at oral argument before the Magistrate Judge, that those entities are not subject to suit because they are not entities which can be sued, (*see* R&R at 6, Feb. 4, 2014, Docket No. 78), so the Court will grant the motions to dismiss as they relate to those Defendants.

## II.    PLAINTIFFS' ALLEGATIONS

Plaintiffs allege that the DRE program was "an unethical clinical trial whereby armed police officers provided vulnerable members of the public with substantial quantities of marijuana . . . , encouraged them to get high, observed them, and then abandoned them while they were still high."  (Compl. ¶ 10.)  Although the program "purportedly existed for the purpose of allowing law enforcement to understand what individuals look and act like while high," Plaintiffs allege that "[i]n actuality, the parties that designed and ran the Program wished to target members of Occupy Minneapolis, members of the homeless population, and other vulnerable members of the population and see what quantity of drugs their bodies could tolerate."  (*Id.* ¶¶ 11-12.)  Plaintiffs allege that the "targeted individuals were taken into police custody, provided with substantial quantities of drugs (principally marijuana) by the police, observed by the police while under the influence of the drugs, and then simply released onto the streets in a high and incoherent state."  (*Id.* ¶ 15.)  Plaintiffs additionally allege that "the parties that designed and ran the Program authorized providing, and actually provided, cash or other consideration (such as food, cigarettes, and even illegal drugs to take home) to members of the public in exchange for participation, and sometimes intimated to the 'volunteers' that they would be arrested if they did not participate."  (*Id.* ¶ 17.)  According to Plaintiffs, they were never "provided with an informed consent form, nor could any consent have ever been truly voluntary," and they were never "asked to supply any medical history."  (*Id.* ¶¶ 18-19.)

Specifically, Plaintiff Michael Bounds alleges that he is a member of the Occupy movement and suffers from epilepsy and schizophrenia and that on or around April 26, 2012, he was approached by "two armed officers participating in the DRE Program" and that he "was asked whether he was high; he responded that he was not," and "[o]ne of the officers in turn responded, '[t]hat's alright, we'll get you high.'" (*Id.* ¶¶ 27-29.) He alleges that the "[o]fficers then provided him with a substantial quantity of powerful marijuana" without conducting any evaluation of him afterwards and then "simply released [him] in downtown Minneapolis while high." (*Id.* ¶¶ 30-31.) He also alleges that he was "given a quarter of a baggie filled with marijuana to take home in 'exchange' for information on the Occupy Minneapolis movement." (*Id.* ¶ 32.)

Plaintiff Forest Olivier similarly alleges that he is an "Occupy member" and that on "three separate occasions on or around April 27, 2012" he was "approached by local law enforcement (including Nicholas Jacobson and either Karl Willers or Kenneth Willers) and offered substantial quantities of drugs." (*Id.* ¶ 33.) He alleges that on the first occasion he "was given eight pipe bowls worth of marijuana, taken to a testing facility to be evaluated, evaluated there, and then returned to Peavey Plaza." (*Id.* ¶ 34.) Similarly, he alleges that on the second occasion he "was given ten or more pipe bowls worth of marijuana, taken to the facility to be evaluated, and then returned to Peavey Plaza." (*Id.* ¶ 35.)

Olivier alleges that on the third occasion, he "was approached by an Officer Willers and another officer" and that "Officer Willers asked Mr. Olivier whether he was in possession of any marijuana, to which Mr. Olivier responded no," and that

"[t]hereafter, Mr. Olivier was placed in the back of a squad car, and his personal belongings were placed in the trunk of the vehicle." (*Id.* ¶¶ 36-38.) Olivier alleges that "Officer Willers then provided Mr. Olivier with a substantial quantity of marijuana, which Mr. Olivier smoked in the back of the squad car," and that "[t]hereafter, Mr. Olivier was taken to the testing facility, at which point other law enforcement officials refused to let Mr. Olivier in because they identified him as being associated with Occupy Minneapolis, and were wary of footage of the [DRE] Program that Occupy Minneapolis had posted on YouTube," so instead "Mr. Olivier was taken back downtown and released onto the streets while incredibly high." (*Id.* ¶¶ 39-41.) Plaintiffs allege that another officer later reported that he "personally witnessed Mr. Olivier being provided drugs by an Officer Willers." (*Id.* ¶ 45.)

With regard to the remaining Plaintiffs – Wia Day, Adam Laguna, Daniel Bell, and Zachary Lorenz – the Complaint states that "[t]he remaining Plaintiffs had similar experiences." (*Id.* ¶ 42.) Plaintiffs allege that Occupy first brought this "unethical and illegal conduct" to light, and that after it did so, "certain officers participating in the program . . . began making the same allegations, which triggered an investigation by the Minnesota Bureau of Criminal Apprehension." (*Id.* ¶¶ 43-44.) Plaintiffs allege that during the investigation, six police officers "refused to provide statements" but that multiple individuals reported that "Officer Kenneth Willers or Officer Karl Willers openly admitted to providing illegal drugs to individuals, and questioned what was wrong with that." (*Id.* ¶¶ 46, 48.) Finally, Plaintiffs allege that "[a]fter these abuses came to light, the DRE Program was suspended." (*Id.* ¶ 49.)

Based on Defendants' alleged conduct, Plaintiffs claim that they have "suffered physical and emotional damages" and bring claims under 42 U.S.C. §§ 1983 and 1988 for depriving Plaintiffs of their First Amendment speech rights and substantive due process right to bodily integrity under the Fourteenth Amendment. (*Id.* at 9-11.) Plaintiffs allege that, in addition to the individual Defendants' violation of their rights, the individual officers were acting in accordance with a policy or custom of their employers, "including but not limited to their employers' negligent training or failure to train." (*Id.* ¶ 55.) Plaintiffs seek compensatory, punitive, and any dignity damages and attorneys' fees. (*Id.* ¶ 63.)[2]

## III.   PROCEEDINGS

Defendants brought several motions to dismiss the Complaint.  Four county law enforcement offices filed motions to dismiss on behalf of their departments and any named officers:  The Ramsey County Sheriff's Office and its officer Defendant Marc Suchy ("Ramsey County Defendants"), (Ramsey Cnty. Defs.' Mot. to Dismiss, Mar. 28, 2013, Docket No. 32); the Anoka County Sheriff's Office and its officer Chris McCall ("Anoka County Defendants"), (Anoka Cnty. Defs.' Mot. to Dismiss, Apr. 3, 2013, Docket No. 40); the Dakota County Sheriff's Department and its officer Bryce Schuenke ("Dakota County Defendants"), (Dakota Cnty. Defs' Mot. to Dismiss, Apr. 9, 2013,

_____

[2] Plaintiffs initially also sought injunctive relief against former Defendants the State of Minnesota, the Minnesota State Patrol, and Riccardo Munoz, but pursuant to a stipulation of dismissal, those parties and the relief sought against them have been dismissed. (Order, May 1, 2013, Docket No. 59.)  Plaintiffs also initially sought relief under the Minnesota Tort Claims Act, but voluntarily withdrew that count. (Mem. in Opp'n to Mots. to Dismiss at 7, 30, Apr. 17, 2013, Docket No. 51.)

Docket No. 46); and the Olmsted County Sheriff's Office and its officers Michelle Ness and Nicholas Jacobson ("Olmsted County Defendants"), (Olmsted Cnty. Defs.' Mot. to Dismiss, May 3, 2013, Docket No. 63).  The remaining City and County Defendants filed a joint motion to dismiss on behalf of them and their officers.  (City and Cnty. Defs.' Mot. to Dismiss, Mar. 29, 2013, Docket No. 37.)

The motions to dismiss collectively argue that Plaintiffs fail to state claims for violation of the First and Fourteenth Amendment because voluntarily smoking marijuana does not amount to an adverse action for the purposes of the First Amendment nor can it be a violation of a person's bodily integrity.  (*See, e.g.*, City and Cnty. Defs.' Mem. in Supp. of Mot. to Dismiss at 5-11, Mar. 29, 2013, Docket No. 39.)  Specifically with regard to individual Defendants not named in the substance of Plaintiffs' allegations, they argue that claims against such Defendants fail because they state no personal involvement by those Defendants.  (*See, e.g.*, Ramsey Cnty. Defs.' Mem. in Supp. of Mot. to Dismiss at 5-7, Mar. 28, 2013, Docket No. 34; Anoka Cnty. Defs.' Mem. in Supp. of Mot. to Dismiss at 6-9, Apr. 4, 2013, Docket No. 42.)  The motions also argue that the individual-capacity suits against the individual officers must fail because any constitutional rights at issue, if they exist, were not clearly established so those officers are entitled to qualified immunity.  (*See, e.g.*, Ramsey Cnty. Defs.' Mem. in Supp. of Mot. to Dismiss at 8-18; Anoka Cnty. Defs.' Mem. in Supp. of Mot. to Dismiss at 9-10.)  They also argue that any official-capacity claims and claims against the law enforcement entities must fail because Plaintiffs have not adequately alleged a policy or custom that caused any deprivation of their constitutional rights and because sheriff's offices and city police departments are not

entities subject to suit.  (*See, e.g.*, Ramsey Cnty. Defs.' Mem. in Supp. of Mot. to Dismiss at 19-20; Dakota Cnty Defs.' Mem. in Supp. of Mot. to Dismiss at 14-15, Apr. 9, 2013, Docket No. 48.)

The Magistrate Judge issued an R&R recommending that, of the remaining claims and Defendants, the First and Fourteenth Amendment claims by only Plaintiffs Bounds and Olivier be permitted to proceed against only Defendants Jacobson, Karl Willers, Kenneth Willers, and John Does 1 and 2 in their individual and official capacities.  (R&R at 19, Feb. 4, 2014, Docket No. 78.)  The R&R recommended that all claims by the remaining Plaintiffs (Day, Laguna, Bell, and Lorenz) be dismissed without prejudice and that all claims against the remaining Defendants be dismissed without prejudice.  (*Id.*)  The R&R reasoned that, although Bounds' and Olivier's allegations against five Defendants were specific and detailed enough to state a claim for violation of their First and Fourteenth Amendment rights, the Complaint did not contain sufficient detail with regard to any other Plaintiffs or Defendants and should therefore be dismissed without prejudice.  (*Id.* at 6-8.)

However, the R&R concluded that Bounds and Olivier adequately alleged violation of clearly established constitutional rights under the First and Fourteenth Amendment such that Defendants Jacobson, Karl Willers, Kenneth Willers, and John Does 1 and 2 are not entitled to qualified immunity.  (*Id.* at 16-17.)  With regard to Plaintiffs' failure-to-train allegations against the individual Defendants in their official capacities, the R&R concluded that Plaintiffs Bounds' and Olivier's allegations regarding the entities' failure to train were sufficient to trigger municipal liability.  (*Id.* at 17-19.)

Defendants filed various objections to the R&R, each incorporating the relevant arguments of the others.   The City and County Defendants and Olmsted County Defendants object to the R&R's conclusion that Bounds and Olivier adequately stated claims for violation of clearly established rights against Defendants Jacobson, Karl Willers, and Kenneth Willers.   (*See* City and Cnty. Defs' Objections to R&R at 6-13, Feb. 18, 2014, Docket No. 79; Olmsted Cnty. Defs.' Objections to R&R at 1, Feb. 18, 2014, Docket No. 81.)   Those Defendants also object to the R&R's conclusion that Bounds and Olivier adequately state claims against them in their official capacities for failure to train.  (City and Cnty. Defs.' Objections to R&R at 13-14; Olmsted Cnty. Defs.' Objections to R&R at 1.)   All Defendants also object to the fact that all claims by the remaining Plaintiffs and against the remaining Defendants were dismissed **without** as opposed to **with** prejudice.   (*See* City and Cnty. Defs.' Objections to R&R at 6; Olmsted Cnty. Defs.' Objections to R&R at 1; Ramsey Cnty. Defs.' Objections to R&R at 2-3, Feb. 18, 2014, Docket No. 80; Dakota Cnty. Defs.' Objections to R&R at 1, Feb. 18, 2014, Docket No. 82; Anoka Cnty. Defs.' Objections to R&R at 1, Feb. 18, 2014, Docket No. 83.)

The Court has reviewed the objections *de novo* and concludes that Plaintiffs Bounds and Olivier adequately allege claims against Defendants Jacobson, Karl Willers, Kenneth Willers, and John Does 1 and 2 in their individual capacities for violating clearly established rights under the First and Fourteenth Amendments, and will thus deny the motions to dismiss with regard to those claims and Defendants.   The Court will dismiss without prejudice the claims by all other Plaintiffs and against all other Defendants,

concluding that the inadequacies at this stage are the type that could be cured by amendment.  The Court will also dismiss without prejudice Bounds' and Olivier's claims against Defendants Jacobson, Karl Willers, Kenneth Willers, and John Does 1 and 2 in their official capacities based on a theory of failure to train because the Plaintiffs have failed to name the appropriate entities as defendants or argue or show how those entities have received an adequate opportunity to respond.

## ANALYSIS

## I.    STANDARD OF REVIEW

Upon the filing of a report and recommendation by a magistrate judge, a party may "serve and file specific written objections to the proposed findings and recommendations."  Fed. R. Civ. P. 72(b)(2); *accord* D. Minn. LR 72.2(b).  "The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to."  Fed. R. Civ. P. 72(b)(3).

In reviewing a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), the Court considers all facts alleged in the complaint as true to determine if the complaint states a "'claim to relief that is plausible on its face.'"  *See, e.g.*, *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  To survive a motion to dismiss, a complaint must provide more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'"  *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility," and therefore must be dismissed. *Id.* (internal quotation marks omitted). Rule 12(b)(6) also authorizes the Court to dismiss a claim on the basis of a dispositive legal issue. *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989).

## II.   CONSTITUTIONAL CLAIMS BY PLAINTIFFS BOUNDS AND OLIVIER

The Court first addresses Defendants' objections to the R&R's conclusion that Plaintiffs Bounds' and Olivier's claims against Defendants Nicholas Jacobson, Karl Willers, Kenneth Willers, and the two John Does should not be dismissed because they adequately allege facts amounting to violations of the First and Fourteenth Amendments. For the purposes of the discussion in this section, "Plaintiffs" and "Defendants" refer only to the relevant Plaintiffs (Bounds and Olivier) and Defendants (Jacobson, Willers, Willers, and John Does).

### A.   First Amendment

"'[T]he First Amendment prohibits government officials from subjecting an individual to retaliatory actions . . . on the basis of . . . constitutionally protected speech.'" *Osborne v. Grussing*, 477 F.3d 1002, 1005 (8th Cir. 2007) (quoting *Hartman v. Moore*, 547 U.S. 250, 256 (2006)). To prevail on a § 1983 claim for retaliation in violation of the First Amendment, a plaintiff "must demonstrate (1) that he engaged in a protected activity; (2) that the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity; and (3) that the

adverse action was motivated at least in part by the exercise of the protected activity." *Santiago v. Blair*, 707 F.3d 984, 991 (8th Cir. 2013).

### 1.   Constitutional Violation

The R&R concluded that Bounds' and Olivier's allegations adequately stated claims meeting these elements.  Defendants object to this conclusion with regard to both the second and third elements.  They argue that there is no adverse action because "[v]oluntary use of marijuana is not an adverse action to support a First Amendment retaliation claim," and that third element is not satisfied because there is no allegation that Bounds and Olivier "were singled out because they were protesting."  (*See* City and Cnty. Defs.' Objections to R&R at 8.)

The latter of these arguments belies plain language in the Complaint.  Plaintiffs allege, in "facts common to all counts," (Compl. at 4 (formatting omitted)) that "the parties that designed and ran the Program wished to target members of Occupy Minneapolis" and that "officers running the Program were instructed to specifically target Occupy Minneapolis protesters exercising their First Amendment right to free speech and peaceable assembly, and in fact targeted such individuals" (*id.* ¶¶ 12-13).  These allegations satisfy the third element at this stage in the proceedings.

With regard to the second element of adverse action, Defendants' argument is only that their action cannot be considered adverse because Plaintiffs' participation was "voluntary" and thus does not compare to adverse actions such as parking tickets or having a car towed.  (City and Cnty. Defs.' Objections to R&R at 8.)  But, despite Defendants' characterizations, at this motion to dismiss stage the Court must take

Plaintiffs' allegations as true that Plaintiffs did not voluntarily participate. Plaintiffs allege that they were "taken into police custody" and "provided with substantial quantities of drugs" by Defendants and that Defendants "sometimes intimated to the 'volunteers' that they would be arrested if they did not participate." (Compl. ¶¶ 15, 17; *see also id.* ¶¶ 15, 28-29, 34-35, 38 (Bounds and Olivier allege they were taken either to an observation facility or to the back of a squad car).) These allegations adequately describe adverse action as required for the First Amendment. An adverse action "need not be great in order to be actionable" because, even if "[t]he effect on freedom of speech [is] small, . . . there is no justification for harassing people for exercising their constitutional rights." *Garcia v. City of Trenton*, 348 F.3d 726, 729 (8th Cir. 2003) (internal quotation marks omitted). A plaintiff must allege an adverse action that "would chill a person of ordinary firmness from continuing in the [protected] activity." *Santiago*, 707 F.3d at 992 (alteration in original) (internal quotations omitted). "[H]arm that is more than minimal will almost always have a chilling effect." *Rhodes v. Robinson*, 408 F.3d 559, 562 n.11 (9th Cir. 2005).

As the R&R aptly concluded, the allegations here meet these standards. Being taken away in police custody after being approached by police with an offer that involves intimation of arrest if not accepted is enough to have a chilling effect on a person of ordinary firmness. *See Hodgkins ex rel. Hodgkins v. Peterson*, 355 F.3d 1048, 1056 (7th Cir. 2004) ("The Supreme Court has often noted that a realistic threat of arrest is enough to chill First Amendment rights." (citing *City of Houston, Tex. v. Hill*, 482 U.S. 451, 459 n.7 (1987); *Steffel v. Thompson*, 415 U.S. 452, 462 (1974))). Defendants argue

that the R&R erred by considering the effect on "**other**" protestors even though no Plaintiff alleges that he or she was actually deterred from protesting.  (City and Cnty. Defs.' Objections to R&R at 8 (emphasis in original)).  But the R&R's conclusion that Defendants' alleged actions would be enough to deter other protestors was appropriate, given that "[t]he question is not whether the plaintiff herself was deterred," but rather whether a person of "ordinary firmness" would have been deterred.  *Garcia*, 348 F.3d at 729; *see also Lawrence v. City of St. Paul*, 740 F. Supp. 2d 1026, 1044 (D. Minn. 2010) ("It is therefore not dispositive that [plaintiff] herself was not deterred . . . .").  The Court therefore concludes that Bounds' and Olivier's allegations suffice to state a claim for violation of their First Amendment rights against Defendants Jacobson, Kenneth Willers, Karl Willers, and John Does 1 and 2.[3]

### 2.   Clearly Established

The individual officers may nevertheless be immune from suit if this First Amendment right was not clearly established at the time of the alleged violation.

---

[3] The City and County Defendants also object to the R&R's conclusion that claims should proceed against **both** Kenneth and Karl Willers on the basis of Plaintiff Olivier's allegations that an officer "Willers" approached him and offered him substantial quantities of marijuana.  (*See* Compl. ¶¶ 33, 36-39.)  Olivier's allegations plausibly implicate **either** officer Willers, and given that Plaintiffs are generally permitted to plead in the alternative or later substitute parties for named individuals in the complaint, Plaintiffs' allegations against both officers may proceed.  *See* Fed. R. Civ. P. 8(a)(3); *In re Hardieplank Fiber Cement Siding Litig.*, Multi-District Litig. No. 12-2359, 2013 WL 3717743, at *12 (D. Minn. July 15, 2013) ("[A]t this [motion to dismiss] stage of the litigation, [plaintiffs] are permitted to plead in the alternative."); *see also* Fed. R. Civ. P. 15(c)(1)(C) (permitting amendment of complaint changing the party or the naming of the party so long as the substituting party receives notice of the action and knew or should have known that the action would have been brought against it but for a mistake concerning their identity).

*Pearson v. Callahan*, 555 U.S. 223, 231 (2009).  The R&R concluded that it was clearly established at the time of the alleged incidents that Defendants' alleged actions would be a constitutional violation, particularly in light of the fact that provision of marijuana is central to the First Amendment claim and marijuana was and remains an illicit drug under Minnesota and federal law.  (R&R at 16-17.)  Defendants object generally, arguing that "[it] was not clearly established [that] utilizing volunteers for the DRE program would violate volunteers' constitutional rights under the First or Fourteenth Amendments," but provide no further explanation or argument.  (City and Cnty. Defs.' Objections to R&R at 13.)

        "For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.  This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent."  *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (internal quotations and citations omitted).[4]  "In determining whether the legal right at issue is clearly established, this circuit applies a

_____

[4] The pre-existing law is not limited to holdings of the United States Supreme Court, as Defendants suggest.  (City and Cnty. Defs.' Objections to R&R at 12.)  That standard applies in the habeas corpus context, but clearly established law for the purposes of qualified immunity is not so limited.  *See Carey v. Musladin*, 549 U.S. 70, 73-74 (2006) (interpreting Antiterrorism and Effective Death Penalty Act of 1996 section referencing "clearly established Federal law, as determined by the Supreme Court of the United States," [28 U.S.C.] § 2254(d)(1), to refer to "holdings, as opposed to . . . dicta" (internal quotation marks omitted)); *Ruffins v. Dep't of Corr. Servs.*, 701 F. Supp. 2d 385, 403 (E.D.N.Y. 2010) (observing that "[s]everal circuits have made clear that the phrase 'clearly established federal law' for the purposes of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") in the habeas context has a different meaning from 'clearly established federal law' for the purposes of qualified immunity" and citing cases).

flexible standard, requiring some, but not precise factual correspondence with precedent, and demanding that officials apply general, well-developed legal principles." *Stoner v. Watlingten*, 735 F.3d 799, 803 (8th Cir. 2013) (internal quotations omitted).

The Court concludes that a reasonable officer would have known that the law of the First Amendment clearly established that the facts as alleged by Plaintiffs—targeting protesters as candidates for the DRE program and intimating that failure to participate would result in arrest—amounts to a violation of free speech rights. "It is undisputed that protesting peaceably is protected speech[,]" *Cross v. Mokwa*, 547 F.3d 890, 896 (8th Cir. 2008), and it is an easy corollary that targeting protesters with a request coupled with an (even subtle) threat of arrest is an unconstitutional retaliation for such speech, *see Hodgkins*, 355 F.3d at 1056 ("[A] realistic threat of arrest is enough to chill First Amendment rights."); *see also Hill v. Lappin*, 630 F.3d 468, 474 (6th Cir. 2010) ("[T]hreats alone can constitute an adverse action if the threat is capable of deterring a person of ordinary firmness from engaging in protected conduct.").

Certainly, the facts alleged here are somewhat unique. Although the Court has not found and the parties have not presented case law with highly similar facts, the Supreme Court has held that "officials can still be on notice that their conduct violates established law even in novel factual circumstances" and has "expressly rejected a requirement that previous cases be 'fundamentally similar.'" *Hope*, 536 U.S. at 741 (quoting *United States v. Lanier*, 520 U.S. 259, 263 (1997)). Thus, the Court concludes that Defendants are not entitled to qualified immunity on Bounds' and Olivier's First Amendment claims.

### B.     Fourteenth Amendment

"The Supreme Court has recognized a substantive due process right to bodily integrity. . . ."  *Rogers v. City of Little Rock, Ark.*, 152 F.3d 790, 795 (8th Cir. 1998) (citing *Washington v. Glucksberg*, 521 U.S. 702, 719-20 (1997); *Cruzan v. Dir., Mo. Dep't of Health*, 497 U.S. 261, 287-88 (1990) (O'Connor, J., concurring)).  In order for a governmental interference with bodily integrity to rise to the level of a violation of a protected liberty interest under the Fourteenth Amendment, the interference must be so severe that it shocks the conscience.  *Id.* at 797; *see also Rochin v. California*, 342 U.S. 165, 172 (1952).  Determining that a person has a liberty interest in their bodily integrity, however, does not end the inquiry, but rather "whether respondent's constitutional rights have been violated must be determined by balancing his liberty interests against the relevant state interests."  *Cruzan*, 497 U.S. at 279 (internal quotations omitted).

### 1.     Constitutional Violation

The R&R concluded that Plaintiffs adequately stated claims for violation of their rights to bodily integrity based on their allegations that the Defendants recruited Plaintiffs to smoke and provided large amounts of marijuana for the purposes of observational training.  Defendants object to this conclusion, arguing that Plaintiffs' substantive due process rights cannot have been violated because their use of marijuana was voluntary and was part of their knowing participation in the program.  Defendants cite to *Wright v. Fred Hutchinson Cancer Research Center*, 269 F. Supp. 2d 1286 (W.D. Wash. 2002), for the proposition that "an individual's voluntary participation in an experimental, therapeutic treatment regimen" does not amount to a violation of an individual's

substantive due process right against violation of their bodily integrity even where "the treating physician fails to adequately inform the patient of the risks, benefits, and alternatives to the experimental treatment and/or potential conflicts of interest unrelated to the treatment regimen itself" without "allegation[s] that defendants hid the true nature of the experiments and/or conducted them for non-therapeutic reasons." *Id.* at 1295.

But this objection does not defeat Plaintiffs' bodily integrity allegations at this stage. Plaintiffs adequately allege that their participation was not, in fact, voluntary, but rather that officers operating the DRE program "sometimes intimated to the 'volunteers' that they would be arrested if they did not participate." (Compl. ¶ 17.)[5] Plaintiffs' allegations amount to claims that Defendants, under threat of arrest and not for any therapeutic purpose, administered "substantial quantit[ies]" of a "powerful" drug that is illegal under state and federal law to Plaintiffs without providing Plaintiffs any information about the risks involved and without first checking Plaintiffs' medical histories, and then dropped Plaintiffs off in downtown Minneapolis without continued supervision. (*See id.* ¶¶ 17, 18, 19, 30-40.)

These allegations suffice, at this stage, to state a claim for violation of bodily integrity. First, Plaintiffs' allegations that their participation was not voluntary make

---

[5] Defendants argue that these allegations are inadequate because neither Bounds nor Olivier allege specifically in the portions of the Complaint listing their individual allegations that they were actually threatened with arrest if they did not participate. (City and Cnty. Defs.' Objections to R&R at 11.) But that splices Plaintiffs' allegations too finely – reading the Complaint "as a whole," Plaintiffs adequately allege that Defendants intimated that they would be arrested if they did not agree to participate as requested by Defendants. *See Bishop v. Tice*, 622 F.2d 349, 358 (8th Cir. 1980) (concluding that the district court erred in dismissing complaint for failure to allege an element where the element was pleaded in some portions but not others of the complaint).

their allegations much closer to those of *In re Cincinnati Radiation Litig.*, 874 F. Supp. 796 (S.D. Ohio 1995), than *Wright*, 269 F. Supp. 2d 1286.   The court in *In re Cincinnati* addressed a motion to dismiss claims for violation of bodily integrity by terminal cancer patients upon whom the military conducted experiments to test the effects upon humans of massive radiation exposure.   874 F. Supp. at 800-01.   The court concluded that, although plaintiffs were technically voluntarily present at the hospital and free to leave at any time, defendants' challenge to the bodily integrity claims on the basis of voluntariness failed at that stage because: (1) many of the plaintiffs were poor and discovery could indicate that the relevant hospital was the only affordable options, (2) plaintiffs alleged that they were misled about the purpose of their "treatment" and were not informed of the possible side effects, and (3) plaintiffs alleged that they did not know that they were free to leave at any time.   *Id.* at 811-12.   Similarly here, Plaintiffs have alleged that officers in the program intimated that failure to participate would result in arrest, that they were not informed of the risks of taking the marijuana, and that they were taken into police custody (from which the Court can infer that Plaintiffs did not feel free to leave).   (*See* Compl. ¶¶ 17, 18, 34, 38, 40 (including allegation that Plaintiff Olivier was placed in the back of a squad car but his personal belongings were placed in the trunk).)   These allegations are far more shocking to the conscience than those in *Wright*, where relatives of the plaintiffs had actually volunteered for experimental medical treatment and the plaintiffs brought claims for the hospital's alleged failure to provide adequate information regarding the risks and for failure to comply with national standards for human subjects' experiments.   269 F. Supp. 2d at 1291, 1294.

Second, unlike in *Wright*, the supposed purpose of Plaintiffs' participation in the DRE program was not for their own therapeutic benefit. In *Wright* the Court concluded that the defendants were entitled to qualified immunity on plaintiffs' claims for substantive due process bodily integrity violations:

> At most, plaintiffs argue that defendants failed to disclose certain important facts regarding the protocol and their own pecuniary interests in the outcome of the experiments, but **such failures, even if proven, would not alter the therapeutic nature of the protocol** or the fact that plaintiffs' decedents knew they were participating in an experiment. Nor is the nature of the experiments disproven simply because the outcome was not what the researchers expected. Whether the therapies proved to be wildly effective or heart-breaking failures, in the absence of allegations that defendants hid the true nature of the experiments and/or conducted them for non-therapeutic reasons, there is no constitutional claim.

*Id.* at 1295 (emphasis added). Unlike in *Wright*, Defendants' alleged actions here did not have a therapeutic benefit for Plaintiffs, and furthermore could not be arguably necessary even to accomplish the purposes of the DRE program – Defendants do not suggest that **providing** citizens with an illicit drug was part of the program's design or necessary for its effectiveness. Thus, in weighing the relevant state interests against Plaintiffs' interest in avoiding state interference with their bodily integrity, *see Youngberg v. Romeo*, 457 U.S. 307 321 (1982), the Court does not see and Defendants have made no argument as to how providing citizens with an illicit drug furthers the state's interest in preparing its law enforcement officers to recognize people under the influence of drugs. Without any legitimate purpose to balance against, the intrusion alleged by Plaintiffs – being taken into police custody and administered large quantities of an illicit drug under threat of arrest without being informed of the risks and then dropped off without supervision –

suffices at this stage as an actionable violation of Plaintiffs' substantive due process right to bodily integrity.

As the R&R observed, this conclusion is particularly true given the potential dangers of Defendants' alleged actions – marijuana is listed as a "Schedule 1" drug, along with heroin and other dangerous drugs, *see* 21 U.S.C. § 812, Schedule 1(c)(10), which means that it "has a high potential for abuse," has "no currently accepted medical use in treatment in the United States," and that "[t]here is a lack of accepted safety for use of the drug or other substance under medical supervision," *id.* § 812(b)(1).  The precise dangers and extent of harm Plaintiffs potentially faced on account of Defendants' alleged actions (*see* Compl. ¶ 50 ("As a result of the Defendants' individual and collective wrongdoing, the Plaintiffs have suffered physical and emotional damages and harm . . . .")), are issues for discovery, but given the illicit nature and the Federal Government's treatment of marijuana as a drug with a "lack of accepted safety for use" even under "medical supervision," 21 U.S.C. § 812(b)(1), Plaintiffs' allegations suffice to state a claim for violation of their substantive due process rights to bodily integrity.

## 2.    Clearly Established

Defendants may nevertheless not be liable for money damages for violation of Plaintiffs' Fourteenth Amendment right if they are protected by qualified immunity.  As discussed above, Defendants are entitled to qualified immunity unless their conduct violated clearly established statutory or constitutional rights of which a reasonable person would have known.  *Pearson*, 555 U.S. at 223.

Defendants argue that it was not clearly established that providing marijuana to participants in the program violated Plaintiffs' constitutional rights.  But in order for the relevant rights to be clearly established, the exact act need not have been previously held unlawful, *Mitchell v. Forsyth*, 472 U.S. 511, 535 n.12 (1995), but rather, "in the light of pre-existing law the unlawfulness must be apparent," *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).  Neither party has presented a case with circumstances comparable to those here to support or negate a conclusion that it was clearly established at the time that Defendants' alleged actions violated Plaintiffs' constitutional right to bodily integrity.  The Court nevertheless concludes that qualified immunity does not shield Defendants from Plaintiffs' allegations of Fourteenth Amendment violations because a reasonable officer should have known that **providing an illicit drug** to a citizen, where such provision was not required by the officer's legitimate duties, violates clearly established law.  Although characterizations of qualified immunity doctrine typically state that the constitutional **right** in question must have been clearly established at the time of the alleged violation, the Supreme Court's exposition of the doctrine in *Harlow v. Fitzgerald*, 457 U.S. 800 (1982), makes clear that the fundamental purpose of the doctrine is to protect officers from liability when it is objectively unreasonable to expect them to have known that their **conduct in general was unlawful**:

> If the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to "know" that the law forbade conduct not previously identified as unlawful.  Until this threshold immunity question is resolved, discovery should not be allowed.  **If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct**.

*Id.* at 818-19 (emphasis added).  The Court continued:

> Where an official could be expected to know that certain conduct would violate statutory or constitutional rights, he should be made to hesitate; and a person who suffers injury caused by such conduct may have a cause of action.  But where an official's duties legitimately require action in which clearly established rights are not implicated, the public interest may be better served by action taken "with independence and without fear of consequences."

*Id.* at 819 (footnote omitted) (quoting *Pierson v. Ray*, 386 U.S. 547, 554 (1967)).  Thus, although "clearly established" typically refers to the specific statutory or constitutional rights in question, at its core qualified immunity was not intended to protect officers from liability for conduct that, when not legitimately required for their duties, they objectively should have known was unlawful.  This logically should exclude from the protection of qualified immunity circumstances, like here, where officers take action that is undisputedly unlawful (providing citizens with illicit drugs), even if case law has not yet explicitly established that such action would violate a specific constitutional right in that context.  Defendants acknowledge that provision of marijuana is a violation of criminal law, but claim that such violation does not give rise to a civil remedy.  (City and Cnty. Defs.' Objections to R&R at 10).  However, the fact that provision of marijuana is a violation of criminal law suffices to put a reasonable officer on notice that providing marijuana to citizens, where such provision is not necessary for carrying out the officer's legitimate duties, violates clearly established law for the purposes of defeating qualified immunity.  Defendants do not argue that **providing marijuana** to citizens was part of the DRE program, and rather, Plaintiffs allege that the program was suspended after an

investigation revealed that officers had been providing illegal drugs to citizens under the cover of the program.  (Compl. ¶¶ 44, 48-49.)[6]

This is not to say that the case law on bodily integrity due process rights did not clearly establish that Defendants' conduct would be a constitutional violation, but rather that, at a minimum, in light of the clear prohibition on providing illicit drugs to citizens, Defendants are not entitled to the protection of qualified immunity for Plaintiffs' allegations here.

## C.      Failure to Train

Defendants object to the R&R's conclusion that Plaintiffs' constitutional claims may proceed against the officers Jacobson, Karl and Kenneth Willers, and the two John Does in their official capacities and therefore against their respective municipal entities under a theory of failure to train.  A "suit against a government employee in his official capacity is to be treated as a suit against the entity" *Coleman v. Espy*, 986 F.2d 1184, 1189 (8th Cir. 1993) (citing *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)), which can be liable only "if an 'action pursuant to official municipal policy of some nature caused a constitutional tort,'" *Bernini v. City of St. Paul*, 665 F.3d 997, 1007 (8th Cir. 2012) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)).  However, it is rare to seek to hold a municipal entity liable for the acts of its officers via an official capacity

---

[6] Other judicial references and assessments of the program do not list actual provision of illicit drugs to participants as part of the program.  *See generally State v. Klawitter*, 518 N.W.2d 577, 585 (Minn. 1994).

suit without naming the entity itself, as Plaintiffs do here.[7]  The Supreme Court addressed

such a situation in *Brandon v. Holt*, where it held that "a judgment against a public

servant 'in his official capacity' imposes liability on the entity that he represents

provided, of course, the public entity received notice and an opportunity to respond."

469 U.S. 464, 471-72 (1985).

Thus, with adequate policy or custom allegations, Plaintiffs can hold the counties

(and cities) associated with the relevant officers liable via the "official capacity" of those

officers only if those entities received notice and an opportunity to respond.  Service

upon the police and sheriffs' units, as Plaintiffs did here, likely satisfies the notice

requirement, given that the entities' counsels also represent the individual officers and

thus have notice of the allegations.  But it is not so clear that the relevant counties (and

cities) have had an opportunity to respond on behalf of the municipal entities.  *Compare*

*Gillis v. U.S. Dep't of Health & Human Servs.*, 759 F.2d 565, 571 & n.8 (6th Cir. 1985)

(notice and opportunity to Health and Human Services department ("HHS") were

satisfied where HHS was named as a defendant in claims by one plaintiff but not another

and counsel for HHS had stated at a hearing that he was prepared to address the merits on

those issues), *with Bush v. Rauch*, 38 F.3d 842, 849 (6th Cir. 1994) (finding that "nothing

in the record indicates that Charlevoix County either received notice of the specific claim,

or had an opportunity to respond, as required by *Brandon*" where individual was

---

[7] Plaintiffs have sued the police departments and sheriff's offices, which are units of the cities and counties involved, but not suable entities themselves.  *See Anderson v. City of Hopkins*, 805 F. Supp. 2d 712, 719 (D. Minn. 2011) ("Municipal police departments are not legal entities subject to suit.").

personally served but Return of Service made no mention of the county and individual no longer worked for the county).  Plaintiffs have made no argument or showing that the relevant municipal entities have received an opportunity to respond that satisfies *Brandon*, so, out of caution and respect for the municipal entities' rights under *Brandon*, the Court deems it appropriate to dismiss these claims without prejudice.

Furthermore, after *Brandon*, the Supreme Court recognized that, in light of *Monell*, "[t]here is no longer a need to bring official-capacity actions against local government officials, for under *Monell* . . . local government units can be sued directly for damages and injunctive or declaratory relief."  *Graham*, 473 U.S. at 167-69 & n.14. The Court is persuaded that, in a case like this, where the municipal entities could have easily been named as defendants, the "suit against the county should still name the county."  *Johnson v. Kegans*, 870 F.2d 992, 998 n.5 (5th Cir. 1989) (observing that *Brandon* did not "suggest that the trial court is **obliged** to allow a suit to proceed where the proper party is not named" and referencing Burger's concurrence in *Brandon*) (emphasis in original)); *see also Brandon*, 469 U.S. at 473 (Burger, C.J., concurring) ("[I]f a claimant seeks damages from a municipality, this should be done by making it a named party defendant . . . .").  The Court will dismiss without prejudice Plaintiffs' claims for failure to train against officers Jacobson, Karl and Kenneth Willers, and John Does in their official capacities.[8]

---

[8] With regard to the parties' discussion of the merits of Plaintiffs' allegations, the Court observes that neither party has made arguments about the sufficiency of the allegations in light of *Connick v. Thompson*, 131 S. Ct. 1350 (2011), the Supreme Court's recent exposition on claims against municipal entities for failure to train employees.

### III.    OBJECTIONS TO DISMISSAL WITHOUT PREJUDICE

With regard to all individual Defendants besides Jacobson, Karl Willers, Kenneth Willers, and two John Does, the Magistrate Judge recommended dismissing all claims against them without prejudice because the allegations against them lacked sufficient detail or specificity to plausibly state claims for constitutional violations.  (R&R at 6-7.) Similarly, the Magistrate Judge recommended dismissing without prejudice all claims by Plaintiffs Day, Laguna, Bell, and Lorenz, whose allegations stated merely that "[t]he remaining plaintiffs had similar experiences [to Bounds and Olivier]."  (Compl. ¶ 42; R&R at 7.)  Defendants object to these recommendations, arguing that these claims should be dismissed **with** prejudice rather than **without** prejudice.  (*See* City and Cnty. Defs.' Objections to R&R at 15; Ramsey Cnty. Defs.' Objections to R&R at 3; Olmsted Cnty. Defs.' Objections to R&R at 1; Dakota Cnty. Defs.' Objections to R&R at 1; Anoka Cnty. Defs.' Objections to R&R at 1.)

The Court deems dismissal without prejudice appropriate here for two reasons. First, in the Eighth Circuit, "[o]rdinarily dismissal of a plaintiff's complaint for failure to comply with Rule 8 should be with leave to amend," unless "the plaintiff has persisted in violating Rule 8."  *Michaelis v. Neb. State Bar Ass'n*, 717 F.2d 437, 438-39 (8th Cir. 1983) (per curiam).  Plaintiffs have not, to this point, abused the privilege of liberal amendment of pleadings.  Secondly, the deficiencies warranting dismissal with regard to these Plaintiffs and Defendants are the kind which could be cured by more specific re-pleading.  As previously discussed, the substantive allegations in the Complaint – that officers targeted Occupy protesters for participation in the program, intimated threats of

arrest for failure to participate, and proceeded to provide the protesters with marijuana – adequately state claims for constitutional violations against Plaintiffs Bounds and Olivier by several Defendants.   Thus, this is not a circumstance in which the Court "is truly unable to conceive of any set of facts under which a plaintiff would be entitled to relief," such that dismissal without prejudice would be inappropriate.  *McLean v. United States*, 566 F.3d 391, 400 (4th Cir. 2009).   Rather, the Complaint lacks details with regard to some officers and some Plaintiffs, a deficiency that could be cured by more specific pleadings.   The Court will thus dismiss the claims against all individual Defendants except Jacobson, Karl Willers, Kenneth Willers, and John Does 1 and 2 in their individual capacities, and all claims by Plaintiffs Day, Laguna, Bell, and Lorenz without prejudice.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, the Court **OVERRULES** Defendants' objections [Docket Nos. 79, 80, 81, 82, 83] and **ADOPTS in part** the Report and Recommendation of the Magistrate Judge dated February 4, 2014 [Docket No. 78] to the extent described above.   Accordingly **IT IS HEREBY ORDERED** that:

1.      Ramsey County Sheriff's Office and Marc Suchy's Motion to Dismiss [Docket No. 32] is **GRANTED** and all claims against those Defendants are **DISMISSED without prejudice**.

2.      The City and County Defendants' Motion to Dismiss [Docket No. 37] is **GRANTED in part** and **DENIED in part**, as follows:

a.      The motion is **DENIED** with regard to claims against Defendants Karl Willers and Kenneth Willers in their individual capacities by Plaintiffs Michael Bounds and Forest Olivier.

b.      The motion is **GRANTED** in all other respects and those claims are **DISMISSED without prejudice**.

3.      Anoka County Sheriff's Office and Chris McCall's Motion to Dismiss [Docket No. 40] is **GRANTED** and all claims against those Defendants are **DISMISSED without prejudice**.

4.      Dakota County Sheriff's Department and Bryce Schuenke's Motion to Dismiss [Docket No. 46] is **GRANTED** and all claims against those Defendants are **DISMISSED without prejudice**.

5.      Olmsted County, Michelle Ness, and Nicholas Jacobson's Motion to Dismiss [Docket No. 63] is **GRANTED in part** and **DENIED in part**, as follows:

a.      The motion is **DENIED** with regard to claims against Defendant Nicholas Jacobson in his individual capacity by Plaintiffs Michael Bounds and Forest Olivier.

b.      The motion is **GRANTED** in all other respects and those claims are **DISMISSED without prejudice**.

6.      Defendants' motions that seek to dismiss all claims against John Does 1-100 and XYZ Entities 1-100 are **GRANTED in part** and **DENIED in part**, as follows:

a.      The motions are **DENIED** with regard to claims against John Does 1-2 in their individual capacities by Plaintiffs Michael Bounds and Forest Olivier.

b.      The motions are **GRANTED** in all other respects and those claims are **DISMISSED without prejudice**.

DATED: March 31, 2014                    _____
at Minneapolis, Minnesota.                              JOHN R. TUNHEIM
                                                  United States District Judge