## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

FOREST OLIVIER, WIA DAY,
ADAM LUGUNA, DANIEL BELL, and
ZACHARY LORENZ,

        Plaintiffs,

v.

KARL WILLERS, KENNETH WILLERS,
NICHOLAS JACOBSON,
BRYCE SCHUENKE, STEVE SCHULZ,
DANIEL LEWIS, MICHAEL HADLAND,
CITY OF HUTCHINSON, NOBLES COUNTY,
OLMSTED COUNTY, DAKOTA COUNTY,
PINE COUNTY, KANABEC COUNTY, and
FILLMORE COUNTY,

        Defendants.

Civil No. 13-266 (JRT/FLN)


**MEMORANDUM OPINION AND
ORDER ON REPORT AND
RECOMMENDATION AS TO
DEFENDANTS' MOTIONS FOR
SUMMARY JUDGMENT**

---

Alan C. Milstein, Michael J. Dube, and Nathan M. Hansen, **SHERMAN SILVERSTEIN KOHL ROSE & PODOLSKY P.A.**, 308 Harper Drive, Suite 200, Moorestown, NJ 08057, for plaintiffs.

Stephanie A. Angolkar, Jon K. Iverson, and Jason M. Hiveley, **IVERSON REUVERS CONDON**, 9321 Ensign Avenue South, Bloomington, MN 55438, for defendants Karl Willers, Kenneth Willers, Daniel Lewis, Steve Schulz, Michael Hadland, City of Hutchinson, Nobles County, Pine County, Kanabec County, and Fillmore County.

Helen R. Brosnahan and Jeffrey A. Timmerman, Assistant County Attorneys, **DAKOTA COUNTY ATTORNEY'S OFFICE**, 1560 Highway 55, Hastings, MN 55033, for defendants Bryce Schuenke and Dakota County.

John M. Baker and Janine W. Kimble, **GREENE ESPEL PLLP**, 222 South Ninth Street, Suite 2200, Minneapolis, MN 55402, for defendants Nicholas Jacobson and Olmsted County.

Plaintiffs Forest Olivier, Wia Day, Adam Luguna, Daniel Bell, and Zachary Lorenz bring this 42 U.S.C. § 1983 action against various law enforcement officers, municipalities, and counties, alleging that these Defendants violated their rights under the First and Fourteenth Amendments.  Plaintiffs were members of the Occupy Minneapolis protest in 2012, and they allege that Defendants targeted them for participation in Minnesota's Drug Recognition Evaluator ("DRE") program, where they were given substantial quantities of marijuana and used as test subjects against their will.  All Defendants have moved for summary judgment.  On January 13, 2016, United States Magistrate Judge Franklin L. Noel issued a Report and Recommendation ("R&R") recommending that the Court permit claims by Plaintiff Day to proceed against Defendants Daniel Lewis and Kanabec County, but that the Court grant summary judgment in favor of all Defendants on all other claims.  All Plaintiffs, as well as Defendants Lewis and Kanabec County, object to the R&R.

Based on a *de novo* review of the record, the Court will overrule Plaintiffs' objections and sustain Lewis and Kanabec County's objections.  The Court finds that Plaintiffs have failed to offer evidence sufficient to support their First Amendment claims.  The Court also finds that Plaintiffs have failed to show that there is a genuine issue of material fact regarding whether Day, Olivier, Lorenz, and Bell participated in the DRE program involuntarily and whether any particular Defendant took Luguna to the DRE testing facility – these findings preclude Plaintiffs' Fourteenth Amendment claims. The Court will therefore adopt in part the recommendation of the Magistrate Judge, and grant summary judgment in favor of all Defendants on all claims by all Plaintiffs.

## BACKGROUND

The DRE program trains law enforcement officers to become drug recognition experts.  (Aff. of John M. Baker ("Baker Aff."), Ex. 19, May 20, 2015, Docket No. 156.) Defendants in this case are law enforcement officers who participated in, or who are alleged to have participated in, the 2012 version of the DRE program, including Karl Willers, Kenneth Willers, Steve Schulz, Brent Schuenke, Daniel Lewis, Michael Hadland, and Nicholas Jacobson ("Officer Defendants").  Defendants also include the cities and counties where the above officers worked, including the City of Hutchinson, Nobles County, Pine County, Kanabec County, Fillmore County, Olmsted County, and Dakota County ("City and County Defendants").

The DRE program in 2012 consisted of three components: (1) two weeks of classwork; (2) a written test; and (3) field testing, which required officers to find and evaluate twelve to fifteen members of the public who were under the influence of drugs. (Baker Aff., Ex. 20 at 8:6-16, 14:20-21, 21:8-25.)  When an officer found someone under the influence of drugs who was willing to volunteer for field testing, the officer was to bring that person to a Minnesota Department of Transportation building ("DRE testing facility"), where they would be observed and evaluated.  (*Id.* at 23:9-13, 24:11-14, 35:4-10.)

In 2012, Plaintiffs were members of the Occupy Minneapolis protest, which took place at Peavey Plaza in downtown Minneapolis.  Plaintiffs allege that the Officer Defendants came to Peavey Plaza in order to find individuals to participate in the field

testing component of the DRE program.  (First Am. Compl. ("Compl.") ¶¶ 14-15, May 19, 2014, Docket No. 108.)   However, instead of finding individuals who were already under the influence of drugs, Plaintiffs allege that the Officer Defendants, among other things, took them into police custody without their informed consent and sometimes under the threat of arrest; gave them substantial quantities of drugs (including marijuana); used them as test subjects for the DRE program; and brought them back to Peavey Plaza while they were still impaired without continued supervision.  (*Id.* ¶¶ 12, 17, 19-20.)

Based on these allegations, Plaintiffs allege three distinct § 1983 claims.  First, they allege that the Officer Defendants targeted them and forced them to take illegal drugs in retaliation for their participation in the Occupy Minneapolis protest and their exercise of their First Amendment rights of speech and assembly.  (*Id.* ¶¶ 15, 64.) Second, Plaintiffs allege that the Officer Defendants violated their Fourteenth Amendment substantive due process right to bodily integrity by giving them substantial quantities of marijuana involuntarily and/or without obtaining proper consent.  (*Id.* ¶¶ 22, 58-68.)  Third, Plaintiffs allege that the City and County Defendants failed to properly train the Officer Defendants, in violation of their substantive due process rights under the Fourteenth Amendment.  (*Id.* ¶ 62, 64-66.)

Plaintiffs initially commenced this action on February 1, 2013.  However, after this Court granted in part and denied in part a motion to dismiss, *Bounds v. Hanneman*, No. 13-266, 2014 WL 1303715 (D. Minn. Mar. 31, 2014), Plaintiffs filed an amended complaint, narrowing the list of Defendants and adding additional factual allegations,

(Compl.).   All Defendants have now moved for summary judgment.   (Mots. for Summ. J., May 20, 2015, Docket Nos. 147, 153, 161.)

In an R&R dated January 13, 2016, the Magistrate Judge recommended that the Court grant summary judgment in favor of all Defendants on all claims by all Plaintiffs, with the exception of two claims alleged by Day.  (R&R at 40-41, Jan. 13, 2016, Docket No. 182.)   The Magistrate Judge found that all Plaintiffs failed to produce evidence showing that any Defendant engaged in First Amendment retaliation.  (*Id.* at 7-12.)  The Magistrate Judge also concluded that all Plaintiffs – except for Day – failed to show a genuine issue of material fact for various elements essential to their Fourteenth Amendment claims.  (*Id.* at 12-40.)  The Magistrate Judge found that Olivier, Lorenz, and Bell failed to offer evidence sufficient to establish that their participation in the DRE program was involuntary.  (*Id.* at 12-25.)  The Magistrate Judge also found that Luguna failed to offer evidence sufficient to link any particular Officer Defendant to his claim. (*Id.* at 31-35.)  Because Olivier, Lorenz, Bell, and Luguna could not establish that any Officer Defendant committed a Fourteenth Amendment violation, the Magistrate Judge further determined that their failure to train claims against the City and County Defendants also could not survive summary judgment.  (*Id.* at 35-37.)

Only Day's claims against Lewis and Kanabec County[1] were found to be viable. The Magistrate Judge determined that there were genuine issues of material fact regarding whether Lewis brought Day to the DRE testing facility and whether Day's

---

[1] In 2012, Lewis was a police officer in Kanabec County.  (Aff. of Stephanie A. Angolkar ("Angolkar Aff."), Ex. 7 at 5:7-8, 7:19-22, May 20, 2015, Docket No. 149.)

participation in the DRE program was voluntary – as to the latter determination, the Magistrate Judge relied on evidence that Day had been adjudicated incompetent by a Minnesota state court.  (*Id.* at 27-29.)  Based in part on these factual disputes, the Magistrate Judge determined that Lewis was not entitled to qualified immunity.  (*Id.* at 29-31.)  The Magistrate Judge also found that Day's failure to train claim against Kanabec County remained viable.  (*Id.* at 37-40.)  Applying a theory of single-incident liability, the Magistrate Judge concluded that it is the job of the fact-finder to determine whether "there [was] a patently obvious need to train [Lewis] to gain proper consent from [Day], and refrain from giving [her] illicit drugs, before subjecting her to bodily testing." (*Id.* at 40.)

Defendants Lewis and Kanabec County object to the R&R.  (Lewis & Kanabec County's Obj. to R&R ("Defs.' Obj."), Jan. 26, 2016, Docket No. 183.)  Lewis argues that the Magistrate Judge erred in determining that he is not entitled to qualified immunity.  Lewis contends that Day failed to proffer evidence sufficient to establish that her participation in the DRE program was involuntarily or coerced.  Absent a showing of involuntariness or coercion, Lewis argues that his conduct cannot give rise to a substantive due process violation.  Kanabec County argues that the Magistrate Judge erred in allowing Day's failure to train claim to survive, either because Lewis did not actually violate her Fourteenth Amendment right to bodily integrity or because the Magistrate Judge incorrectly applied single-incident liability.

All Plaintiffs also object to the R&R.  (Pls.' Objs. to R&R ("Pls.' Objs."), Jan. 27, 2016, Docket No. 184.)  They first argue that the Magistrate Judge incorrectly determined

that their First Amendment retaliation claim should be dismissed on summary judgment. Plaintiffs also object to the Magistrate Judge's summary judgment recommendation for their Fourteenth Amendment claims.[2]  Plaintiffs assert that the Magistrate Judge usurped the role of the jury by making improper credibility determinations.  Plaintiffs also argue that the Magistrate Judge incorrectly found that there were no genuine issues of material fact regarding whether some Plaintiffs participated voluntarily in the DRE program.

## DISCUSSION

## I.    STANDARD OF REVIEW

Upon the filing of a report and recommendation by a magistrate judge, a party may "serve and file specific written objections to the proposed findings and recommendations."  Fed. R. Civ. P. 72(b)(2); *accord* D. Minn. LR 72.2(b).  "The district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to."  Fed. R. Civ. P. 72(b)(3).

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party can demonstrate that it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A fact is material if it might affect the outcome of the lawsuit, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for either party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A court considering a motion for summary judgment must view the facts in

---

[2] Plaintiffs do not object to the Magistrate Judge's recommendation that Day's claims against Lewis and Kanabec County be allowed to proceed.

the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences to be drawn from those facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment is appropriate if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "To defeat a motion for summary judgment, a party may not rest upon allegations, but must produce probative evidence sufficient to demonstrate a genuine issue [of material fact] for trial." *Davenport v. Univ. of Ark. Bd. of Trs.*, 553 F .3d 1110, 1113 (8th Cir. 2009) (citing *Anderson*, 477 U.S. at 247-49).

## II.    DEFENDANTS' OBJECTIONS

### A.    Lewis:  Qualified Immunity

As noted above, Lewis argues that Day has failed to offer evidence showing that her participation in the DRE program was involuntary or coerced. Lewis further argues that this issue is dispositive to her claim – absent evidence of involuntariness or coercion, Day cannot establish that Lewis violated her substantive due process right to bodily integrity because his conduct was not otherwise conscience shocking.[3] *See Villanueva v.*

---

[3] Day argues that Lewis may not raise this argument in his objection because he did not previously raise it before the Magistrate Judge. But Day misconstrues the law. While it is true that a party may not raise **new** arguments in an objection to an R&R, a party is certainly entitled to object to a magistrate judge's specific factual finding or conclusion of law. Fed. R. Civ. P. 72(b)(2) ("[A] party may serve and file specific written objections to the proposed findings and recommendations."). Here, the Magistrate Judge found that there is a genuine issue of material fact regarding whether Day voluntarily participated in the DRE program. Lewis may object to this finding.

*City of Scottsbluff*, 779 F.3d 507, 513 (8th Cir. 2015) (finding that a "violation of the right to bodily integrity must be 'so egregious[ and] so outrageous, that it may fairly be said to shock the contemporary conscience'" (quoting *Rogers v. City of Little Rock*, 152 F.3d 790, 797 (8th Cir. 1998))).

In the R&R, the Magistrate Judge found that there was a genuine issue of material fact regarding Day's involuntary or coerced participation in the DRE program – because Day offered evidence that she had been adjudicated incompetent, a reasonable jury could find that she lacked the mental capacity to consent. (R&R at 28-29.) But whether Day can maintain a substantive due process claim based on her lack of mental capacity does not rest of her mental capacity alone. Instead, as the Eighth Circuit has held, Day must also show that her mental incapacity was "known" or "manifest" – meaning "obvious" – to Lewis. *See Lee ex rel. Lee v. Borders*, 764 F.3d 966, 971-73 (8th Cir. 2014). The reason for this knowledge requirement is intuitive: "the Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty, or property." *Id.* at 972 (brackets omitted) (quoting *Daniels v. Williams,* 474 U.S. 327, 328 (1986)). In other words, if Lewis did not know – or had no reason to know – that Day lacked the ability to consent due to her mental incapacity, it cannot be said that his conduct was so egregious and so outrageous that it shocks the conscience.

On the issue of Lewis' knowledge, which the Magistrate Judge did not consider, the Court finds that Day's evidence is insufficient. Day has not offered any evidence to show that Lewis had actual knowledge of her alleged mental incapacity. In her deposition testimony, Day admitted that she did not tell Lewis that she suffered from any

medical conditions or disabilities.  (Aff. of Stephanie A. Angolkar ("Angolkar Aff."), Ex. 1 ("Day Dep.") at 34:24-35:6, May 20, 2015, Docket No. 149.)  Day also has not offered any evidence to show that her mental incapacity was manifest or obvious to Lewis.  Despite extensive briefing and full discovery, Day points to no evidence indicating that she showed visible signs of mental incapacitation.  Day makes a conclusory argument that "a reasonable jury could listen to and observe [her] speech pattern and demeanor and conclude that a reasonable officer would have been aware that she is incapacitated."  (Pls.' Mem. in Opp'n to Defs.' Obj. at 8, Feb. 8, 2016, Docket No. 185.)  Yet in a video that actually shows Day interacting with police officers and others at Peavey Plaza, there is nothing to outwardly suggest mental incapacitation.  (Angolkar Aff., Ex. 12 ("FILE0033.AVI") at 0:09-2:19.)  Altogether, a reasonable juror could not find that Day's alleged mental incapacitation was manifest or obvious to Lewis.

Because Day has failed to offer evidence showing that her mental incapacitation was known or manifest to Lewis, she must point to some other evidence to establish that her participation in the DRE program was involuntary or coerced.  Searching the record, the Court finds no such evidence.  In her deposition, Day admitted that she "approached the officers," (Day Dep. at 21:17-22); that she volunteered to participate in the DRE program because she was "curious," (*id.* at 28:1-17); that she felt she could have walked away, (*id.* at 28:18-24); and that although the situation "felt really sketchy" and she was "worried" about her friends who had participated, she "couldn't really complain" because the officer gave her "free weed," (*id.* at 24:12-14, 35:15-24).  Day offers no evidence that

Lewis intimidated her, threated to arrest her, or did anything else to force her to participate against her will.

Day contends that the unconscionable nature of the DRE program negates any consent she may have given.  But the DRE program, as objectionable as it is alleged to be, cannot buoy Day's substantive due process claim absent evidence that she participated involuntarily, was coerced, or was misled.  Day also attempts to analogize this case to cases involving state-sponsored experiments on human test subjects.  Day argues that in those cases, courts have found that an individual cannot consent to be a test subject if the experiment has no therapeutic value and the individual was misled as to the experiment's purpose or therapeutic value.  *See Heinrich ex rel. Heinrich v. Sweet*, 62 F. Supp. 2d 282, 312-15 (D. Mass. 1999); *Stadt v. Univ. of Rochester*, 921 F. Supp. 1023, 1027-28 (W.D.N.Y. 1996); *In re Cincinnati Radiation Litig.*, 874 F. Supp. 796, 810-14 (S.D. Ohio 1995).  Yet this analogy is inapposite based on the actual evidence in the record.  Day offers no evidence to show that Lewis misled her about the purpose of the program or represented to her that the program had some therapeutic value.  To the contrary, Day testified that Lewis explained to her why he was seeking volunteers: "They asked if there would be any volunteers who were interested in doing a little survey for them, and I agreed to it, and I asked them what – what the surveillance was for and they said, well, we're doing this special training for just some classes for the cops."  (Day Dep. at 28:1-6.)

The Court instead finds that Day's claim, at the summary judgment stage, is more appropriately analogized to *Wright v. Fred Hutchinson Cancer Research Center*,

269 F. Supp. 2d 1286 (W.D. Wash. Aug. 8, 2002). There, the court held that the relatives of deceased cancer patients who received an experimental cancer treatment had not stated a claim for a violation of the right to bodily integrity because the experimental nature of the treatment was fully disclosed, even if all of the risk factors were not. *Id.* at 1294-96. Here, as explained above, Day admits that Lewis disclosed the purpose of the DRE program. And even if the Court were to assume that Lewis did not disclose some or all the risk factors of marijuana use, this would not give rise to a genuine factual dispute necessitating trial – Day admitted that she smoked marijuana on a near daily basis from 2011 until September 2014 and had smoked marijuana about four times in Peavey Plaza over the two-week period immediately preceding her first contact with Lewis. (Day Dep. at 23:15-24:5, 47:1-6.)

Overall, based on a *de novo* review of the record, the Court finds that Day has not shown that her participation in the DRE program was involuntary or the product of coercion. This Court's earlier finding in *Bounds v. Hanneman* – that Plaintiffs had stated a plausible claim for a violation of their right to bodily integrity – was premised on allegations that Plaintiffs were in some manner forced to participate in the DRE program against their will. 2014 WL 1303715, at *8-10. Now that Day has failed to offer evidence sufficient to substantiate these allegations, the Court simply cannot say that Lewis' alleged conduct rises to the level necessary to implicate substantive due process protections. Although his alleged conduct certainly could be described as negligent or irresponsible, it does not shock the conscience absent a showing of involuntariness or coercion. *See Cty. of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998) ("[L]iability for

negligently inflicted harm is categorically beneath the threshold of constitutional due process.").

Because Day has not offered evidence sufficient to support her Fourteenth Amendment claim, the Court finds that Lewis is entitled to qualified immunity. *See Hayek v. City of St. Paul*, 488 F.3d 1049, 1054 (8th Cir. 2007) (noting that "[i]f the allegations and undisputed facts do not amount to a constitutional violation," the officer is entitled to qualified immunity). And because Lewis is entitled to qualified immunity, the Court will sustain his objection, decline to adopt the Magistrate Judge's recommendation, and grant summary judgment in his favor.[4]

### B.      Kanabec County:  Failure to Train

Kanabec County argues that the Magistrate Judge erred in finding that Day's § 1983 failure to train claim should survive summary judgment, and the Court agrees. "Without a constitutional violation by the individual officer[], there can be no . . . failure to train municipal liability." *Sanders v. City of Minneapolis*, 474 F.3d 523, 527 (8th Cir. 2007). Here, because Day has not shown that Lewis committed a constitutional violation, she cannot maintain her failure to train claim against Kanabec County.[5] The Court will therefore sustain Kanabec County's objection, decline to adopt the Magistrate Judge's recommendation, and grant summary judgment in the county's favor.

---

[4] Because Day cannot show that her participation in the DRE program was involuntary, her right to bodily integrity claim against all other Officer Defendants also fails.

[5] The Court need not reach or decide Kanabec County's alternative argument that the Magistrate Judge incorrectly applied single-incident liability.

### III.   PLAINTIFFS' OBJECTIONS

#### A.   First Amendment Retaliation

In the R&R, the Magistrate Judge concluded that summary judgment must be granted on Plaintiffs' First Amendment retaliation claims because "Plaintiffs have failed to put forth any evidence that any Defendant's decision to approach an individual at Peavey Plaza was motivated by the individual's participation in the Occupy Minneapolis protests" or by the individual's exercise of his or her First Amendment rights.  (R&R at 8.)   Having conducted a *de novo* review of the record, the Court reaches the same conclusion.

For a First Amendment retaliation claim to succeed, a "plaintiff must show a causal connection between a defendant's retaliatory animus and plaintiff's subsequent injury."  *Osborne v. Grussing*, 477 F.3d 1002, 1005 (8th Cir. 2007) (brackets omitted) (quoting *Hartman v. Moore*, 547 U.S. 250, 259 (2006)).  "Retaliation need not have been the sole motive, but it must have been a 'substantial factor'" in the adverse action. *Kilpatrick v. King*, 499 F.3d 759, 767 (8th Cir. 2007) (quoting *Wishnatsky v. Rovner,* 433 F.3d 608, 613 (8th Cir. 2006)).  "Furthermore, the plaintiff must show that the retaliatory motive was a but-for cause of the harm; that is, that the plaintiff was 'singled out' for adverse treatment because of his exercise of constitutional rights."  *Id.* (quoting *Osborne,* 477 F.3d at 1006).

Here, while the evidence may show that Plaintiffs' were targeted because they were at Peavey Plaza, the Occupy Minneapolis protest site, there is no evidence to show

that they were targeted in retaliation for being Occupy Minneapolis protestors. This distinction is crucial. The evidence, at most, indicates that some Officer Defendants approached individuals at the Occupy Minneapolis protest site because they believed these individuals were possibly drug users and thus good candidates for the DRE program. (*See* Angolkar Aff., Ex. 8 at 13:4-7.)

In their objection, Plaintiffs point to what they call "circumstantial evidence" – because Defendants did not target "patrons of the Minnesota Orchestra, which performs in a concert hall adjacent to Peavey Plaza," a reasonable jury could conclude that the Officer Defendants specifically targeted Occupy Minneapolis protesters in retaliation for exercising their First Amendment rights. (Pls.' Obj. at 14.) But this "circumstantial evidence" is simply too tenuous and speculative for the purposes of summary judgment. *See Habib v. NationsBank*, 279 F.3d 563, 567 (8th Cir. 2001) ("In order to survive a motion for summary judgment . . . the non-moving party must be able to 'substantiate his allegations with sufficient probative evidence that would permit a finding in his favor based on more than mere speculation, conjecture, or fantasy.'" (quoting *Wilson v. Int'l Bus. Machs. Corp.*, 62 F.3d 237, 241 (8th Cir. 1995))). Plaintiffs must present some evidence that Defendants' were motivated by retaliatory animus, which they have not done. Accordingly, the Court finds that there is no genuine issue of material fact regarding whether any Officer Defendants retaliated against any Plaintiffs for exercising their First Amendment rights. The Court will therefore overrule Plaintiffs' objection, adopt the recommendation of the Magistrate Judge, and grant summary judgment in favor of all Defendants.

**B.**     **Fourteenth Amendment Claims**

Plaintiffs also object to the Magistrate Judge's recommendation that their Fourteenth Amendment claims be dismissed on summary judgment. Their objection rests on two grounds: the Magistrate Judge made improper credibility determinations and erred in finding that there are no genuine issues of material fact regarding whether some Plaintiffs voluntarily participated in the DRE program.

**1.**     **Forest Olivier, Jacob Lorenz, and Daniel Bell**

Based on a *de novo* review of the record, the Court finds that Olivier, Bell, and Lorenz's Fourteenth Amendment claims cannot survive summary judgment. Without even reaching the question of whether the Magistrate Judge made improper credibility determinations, the Court finds that there are no genuine issues of material fact regarding whether their participation in the DRE program was involuntary or the product of coercion. As with Day, this finding disposes of their claims.

Olivier, in his deposition, admitted that he "wanted" to participate in the DRE program and that "nobody forced" him. (Angolkar Aff., Ex. 2 ("Olivier Dep.") at 15:4-19.) Video evidence corroborates that he was a willing participant. In one video, Olivier asks Day "Can I do it?" and then gets into the back seat of a squad car on his own volition. (FILE0033.AVI at 0:50-2:24.) In another video, Olivier is seen giving a "thumbs up" sign while sitting in the backseat of a squad car. (Baker Aff., Ex. 28 ("Untitled1.mov") at 0:02-2:06; Olivier Dep. at 43:23-44:2.) Lorenz's deposition testimony reflects the same: he stated that he partook voluntarily in the DRE program,

officers did not force him to participate, and he felt free to leave.  (Angolkar Aff., Ex. 3 ("Lorenz Dep.") at 24:7-25:2.)  Bell, meanwhile, admitted in his deposition that officers never threatened him, never said that he would be charged with a crime if he stopped participating, and explained to him the purpose behind the program.  (*Id.*, Ex. 4 ("Bell Dep.") at 22:3-6, 22:14-18, 29:1-5.)  He further testified that he knew officers were giving away marijuana and that he went along because his "little brother" had also decided to participate.  (*Id.* at 11:15-12:4.)  And although Bell testified that the officers at times made him feel "uncomfortable," that he was scared that they might try to "set [him] up," and that he did not feel free to leave once he arrived at the DRE testing facility because there were many officers present, he also stated that the officers did not force him to participate and that he "could have" declined from the start. (*Id.* at 26:2-25, 34:20-25.)  *Cf. United States v. Drayton*, 536 U.S. 194, 204-5 (2002) (finding that in the Fourth Amendment seizure context, questioning by uniformed law enforcement officers "hardly eliminates the consensual nature of the response"); *INS v. Delgado*, 466 U.S. 210, 217-18 (1984) (finding that allegations of "an intimidating psychological environment" were insufficient to constitute a Fourth Amendment seizure because respondents failed to offer evidence showing that they were not free to leave).

In rebuttal, Olivier, Lorenz, and Bell rely on two arguments that the Court already rejected with respect to Day's claim against Lewis – that the unconscionable nature of the DRE program, as well as the fact that the program had no therapeutic value, negates any consent they may have given.  But as with Day, these Plaintiffs have not pointed to any evidence indicating that they there were misled as to the purpose of the program or its

therapeutic value.  They also have not offered any evidence to overcome their deposition testimony and the video clips cited above.  Absent such evidence, a reasonable jury simply could not find that their participation in the DRE program was involuntary or the product of coercion, or that any officer violated their right to bodily integrity.  The Court will therefore overrule their objections, adopt the recommendation of the Magistrate Judge, and grant summary judgment in favor of all Defendants.[6]

### 2.    Adam Luguna

Based on a *de novo* review of the record, the Court also finds that Luguna's Fourteenth Amendment claims cannot survive summary judgment.  Luguna alleges interactions with only two officers: Schuenke from Dakota County and Hadland from Fillmore County.  (Compl. ¶ 44.)  His claim against each fails for a different reason.

In the R&R, the Magistrate Judge recommended that summary judgment on Luguna's claim against Schuenke be granted because Luguna offered no evidence connecting Schuenke him to any constitutional violation.  (R&R at 32-34.)  The Court reaches the same conclusion.  In response to a request for admission, Luguna admitted that Schuenke did not transport him to or from the DRE evaluation facility; "did not coerce [him] to participate in a DRE evaluation by use of physical force, violence or verbal threats"; did not provide or offer to provide him with marijuana; and was not present when he received marijuana.  (Baker Aff., Ex. 59 at 40-41.)  In light of these

---

[6] This grant of summary judgment covers both their right to bodily integrity claims against the Officer Defendants and their failure to train claims against the City and County Defendants.  *See Sanders*, 474 F.3d at 527 ("Without a constitutional violation by the individual officer[], there can be no . . . failure to train municipal liability.").

admissions, there can be no genuine issue of material fact as to whether Schuenke violated Luguna's substantive due process right to bodily integrity.

The Magistrate Judge also concluded that summary judgment must be granted on Luguna's claim against Hadland because his "identification of Hadland as one of the officers who took him to the DRE facility is mere conjecture." (R&R at 35.) Luguna argues that this constitutes an improper credibility determination, but the Court disagrees. Luguna has failed to offer probative evidence connecting Hadland to his claim.

As the Magistrate Judge noted, Luguna testified that he did not know either of the two officers who allegedly drove him to the DRE facility. (Angolkar Aff., Ex. 5 ("Luguna Dep.") at 69:12-15.) He testified that one was "shorter" and "fatter" and had a name that started with the letter K, while the other officer was "tall" and "bald." (*Id.* 32:5-8.) When asked if he could pick their names out of a list, however, Luguna admitted that he "would be guessing." (*Id.* at 68:3-10.) Luguna only identified Hadland after the attorney conducting the deposition specifically mentioned his name. (*Id.* at 70:4-7 ("Michael Hadland, does that ring a bell?").) And even after being provided with the name, Luguna still expressed uncertainty as to Hadland's identity: "I want to say that's the taller, bald guy. . . . I believe his name was Michael. I didn't – I didn't know his last name." (*Id.* at 70:8-12.) Perhaps most significantly, Luguna admitted that he only recognized the name Michael because someone told it to him "later, after [the DRE] event"; his recognition of the name was therefore not based on personal knowledge. (*See id.* at 70:15-18.)

Luguna also was not able to identify either officer as working for Fillmore County. Luguna testified that "for the longest time [he] was under the impression that" the officers were state troopers. (*Id.* at 28:4-6.) He further testified that he only learned about Fillmore County at some later date after he had already retained an attorney. (*Id.* at 29:2-22.) Indeed, in a video recorded on the same day shortly after Luguna allegedly participated in the DRE program, he stated that he remembered seeing officers from Dakota County and Shakopee County, but he did not mention Fillmore County. (*Id.*, Ex. 14 ("FILE1070.AVI") at 2:02-2:17.)

The closest that Luguna comes to offering probative evidence about Hadland's involvement is his testimony that he reviewed a "video" of co-Plaintiff Olivier being taken to the DRE testing facility by several officers. (Luguna Dep. at 30:3-7.) Luguna stated that he thought he recognized "at least one" of the officers in the video as being the same cop "that picked [him] up." (*Id.* at 30:13-19.) But even this testimony does not rise above the level of conjecture and speculation. First, Luguna never specifies which cop he observed in the video, whether it was the short, fat one with a name starting with K, or the tall, bald one who may have had the first name Michael. Second, Luguna has not identified the video he reviewed – the Court has no way to tell whether this video is actually a part of the record or if it even exists. Third, Olivier's deposition testimony offers little corroboration that he ever interacted with Hadland. When asked if he recognized "the name Fillmore County Deputy Michael Hadland," Olivier stated that he had heard the name but was "not sure" and could not "remember" if Hadland ever brought him to the DRE facility. (Olivier Dep. at 148:19-149:18.)

On this evidence, a reasonable jury simply could not find that Hadland took Luguna to the DRE training facility. While the Court does "not weigh the evidence, make credibility determinations, or attempt to determine the truth of the matter" on a motion for summary judgment, it must nevertheless "determine whether a dispute about a material fact is genuine." *Quick v. Donaldson Co.*, 90 F.3d 1372, 1376-77 (8th Cir. 1996). Here, the dispute is not genuine – Luguna provides only speculation and conjecture as to Hadland's involvement, which is not competent summary judgment evidence.

The Eighth Circuit has recognized that a plaintiff can bring a § 1983 claim against an unknown defendant and survive a motion to dismiss so long as "the complaint makes allegations specific enough to permit the identity of the party to be ascertained after reasonable discovery." *Estate of Rosenberg by Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995). In the instant action, the scenario is reversed. While Luguna identified Hadland in the complaint, he has failed to produce any evidence supporting Hadland's identity or role. Despite having the full benefit of discovery, the only evidence that Luguna can point to is speculative deposition testimony and references to an unidentified video. *See Habib*, 279 F.3d at 567. Hadland cannot be held liable for a constitutional violation without probative evidence identifying him as the perpetrator of that violation.

Accordingly, the Court will overrule Luguna's objections, adopt the Magistrate Judge's recommendation, and grant summary judgment in favor of Schuenke, Hadland, and all other Officer Defendants. Moreover, because Luguna has not shown that any Officer Defendants violated his substantive due process rights, the Court will grant

summary judgment for the City and County Defendants on Luguna's failure to train claim.

## IV.    CONCLUSION

For the reasons outlined above, the Court will grant summary judgment in favor of all Defendants on all claims by all Plaintiffs.  The Court is without question troubled by Plaintiffs' allegations.  The Court can hardly think of a training program as ill-advised as the DRE program.  However, to survive summary judgment, Plaintiffs had to produce evidence showing that their allegations were more than just allegations, that there were genuine issues of material fact for trial, and that a jury could return a verdict in their favor.  The Court will grant summary judgment in Defendants' favor because Plaintiffs have failed to carry this burden.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, the Court **OVERRULES** Plaintiffs' objection [Docket No. 184], **SUSTAINS** Defendants Daniel Lewis and Kanabec County's objection [Docket No. 183] and **ADOPTS in part** and **REJECTS in part** the Report and Recommendation of the Magistrate Judge dated January 13, 2016 [Docket No. 182].  Accordingly, **IT IS HEREBY ORDERED** that:

1.    Defendants Nicholas Jacobson and Olmsted County's motion for summary judgment [Docket No. 153] is **GRANTED**.

2.      Defendants Bryce Schuenke and Dakota County's motion for summary judgment [Docker No. 161] is **GRANTED**.

**3.**      Defendants Karl Willers, City of Hutchinson, Kenneth Willers, Nobles County, Pine County, Daniel Lewis, Steve Schulz, Kanabec County, Michael Hadland, and Fillmore County's motion for summary judgment [Docket No. 147] is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


DATED:  March 31, 2016                    _____s/ John R. Tunheim_____
at Minneapolis, Minnesota.                        JOHN R. TUNHEIM
                                                            Chief Judge
                                              United States District Court